UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FELIPE BURCIAGA,

Plaintiff,

v.

GOETTL HOME SERVICES, LLC d/b/a GOETTL AIR CONDITIONING AND PLUMBING,

Defendant.

Case No. 3:25-cv-00443-MMD-CLB

ORDER

## I. SUMMARY

This action arises from a dispute regarding the enforceability and application of arbitration agreements entered into in connection with Plaintiff Felipe Burciaga's employment with Defendant Goettl Home Services, LLC d/b/a Goettl Air Conditioning and Plumbing ("Goettl" or "the Company"). (ECF No. 1 ("Complaint").) Burciaga sued Goettl alleging violations of the Fair Labor Standards Act ("FLSA") and the California Labor Code. (*Id.*) Burciaga seeks to pursue his FLSA claim on behalf of a collective and his California claims on behalf of a putative class. (*Id.* at 10-14.) Before the Court are Goettl's motion to compel arbitration (ECF No. 11),[1] motion to dismiss Burciaga's class and collective action claims (ECF No. 12),[2] and motion to stay the case pending arbitration (ECF No. 13)[3]. As further explained below, the Court will grant the three motions.

## II. BACKGROUND

The following allegations are adapted primarily from the Complaint (ECF No. 1) and the motion to compel arbitration (ECF No. 11). Goettl is a Delaware corporation with

---

[1]Plaintiff responded (ECF No. 15), and Defendant replied (ECF No. 22).

[2]Plaintiff responded (ECF No. 16), and Defendant replied (ECF No. 23).

[3]Plaintiff responded (ECF No. 17), and Defendant replied (ECF No. 24).

its principal place of business in Las Vegas, Nevada and operates HVAC and plumbing businesses in several states. (ECF No. 1 at 4.) Burciaga was employed by Peach Home Services, LLC ("Peach"), a California-based subsidiary of Goettl, as a technician in Vista, California from approximately November 2021 through November 2022.[4] (*Id.* at 3.) Burciaga alleges that, during his employment, Goettl failed to pay him overtime wages in violation of the FLSA and California Labor Code. (*Id.* at 6-9.) He further alleges that Goettl failed to provide required meal and rest periods, timely pay all wages owed, provide accurate wage statements, maintain required payroll records, and reimburse him for business expenses. (*Id.* at 1-2.) Based on these alleged violations, Burciaga also alleges that Goettl engaged in unlawful, unfair, and/or deceptive business practices under California Business and Professions Code §§ 17200, *et seq.* (*Id.* at 20-21.) Burciaga brings his FLSA claim on behalf of himself and other similarly situated employees (the "FLSA Collective") (*id.* at 10-11) and his California Labor Code claims on behalf of a putative class (the "California Class") (*id.* at 11-14).

**A. The 2021 Arbitration Agreement**

As part of his employment with Peach, Burciaga electronically signed a "Voluntary, Mutual Agreement to Arbitrate" on August 28, 2021 (the "2021 Arbitration Agreement"). (ECF No. 11-1 at 6-7.) The 2021 Agreement provides for binding arbitration of "claims arising out of or relating to [his] employment," including claims concerning "compensation" and "unpaid wages" as well as claims for "violation[s] of local, state, or federal law." (ECF No. 11 at 2-3 (citing ECF No. 11-1 at 6-7).) The Agreement also provides that any claims are to be resolved "on an individual basis only" and "not on a class, collective, or representative basis." (ECF No. 11-1 at 7 (the "class waiver").) The 2021 Agreement further provides that the arbitrator, rather than a court, has the authority to resolve

[4]The Court notes a discrepancy in dates of employment. According to Goettl, records from its Human Resources department show that Burciaga was employed from approximately September 2, 2021 through September 13, 2022. (ECF No. 11 at 2; ECF No. 11-1 at 3.)

disputes "relating to the interpretation, applicability, enforceability or formation" of the agreement, including disputes concerning arbitrability. (*Id.*)

**B. The 2022 Arbitration Agreement**

On May 16, 2022, Burciaga electronically signed a second "Mutual Agreement to Arbitrate" (the "2022 Arbitration Agreement"). (ECF No. 11 at 3 (citing ECF No. 11-1 at 9-12).) The parties agree that the 2022 Agreement is the operative agreement. (ECF No. 11 at 10-11; ECF No. 15 at 7-10.) The 2022 Agreement covers "all claims" between Burciaga and the Company, subject to several enumerated exclusions, including "claims for workers' compensation or unemployment compensation benefits; claims that as a matter of law cannot be subject to arbitration (after application of Federal Arbitration Act preemption principles); and claims under an employee benefit or pension plan that specifies a different arbitration procedure." (ECF No. 11-1 at 10.) The claims asserted in the Complaint do not fall within these exclusions.

Like the 2021 Agreement, the 2022 Agreement requires covered claims to proceed individually rather than on a class or collective basis.[5] (ECF No. 11 at 3 (citing ECF No. 11-1 at 9-12).) Unlike the 2021 Agreement, however, the 2022 Agreement expressly provides that it "shall remain in effect notwithstanding the termination" of Burciaga's employment. (ECF No. 11-1 at 10.) The 2022 Agreement also contains provisions materially different from those in the 2021 Agreement concerning the resolution of arbitrability disputes and choice of law. In particular, the 2022 Agreement provides that a "court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the formation, validity, or enforceability of any provision of this Agreement." (*Id.*)

Both agreements provide that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of their terms. (*Id.* at 7, 10.) However, unlike the 2021 Arbitration Agreement, the 2022 Arbitration Agreement provides that the FAA governs its enforcement and, if the FAA does not apply, the arbitration law of the state in which

[5]Under the 2022 Arbitration Agreement, Burciaga "waive[s] the right to initiate, participate in, or recover through, any class or collective action." (ECF No. 11-1 at 10.)

Burciaga rendered services to the Company governs. (*Id.* at 10.) Because Burciaga worked in California, the parties agree that California law applies to the 2022 Agreement to the extent state arbitration law governs.

**C. This Action**

Goettl contends that Burciaga's claims are subject to arbitration under the two arbitration agreements. (ECF No. 11 at 2-3.) Goettl thus moves to compel Burciaga to arbitrate his claims on an individual basis, dismiss his class and collective action claims, and stay this action pending arbitration. (ECF Nos. 11, 12, 13.) The Court will address the motions collectively.

**III. DISCUSSION**

The Court first addresses Goettl's request to compel arbitration before turning to its request to dismiss the class and collective action claims. The Court will grant both requests and, accordingly, will stay this action pending the outcome of arbitration.

**A. Motion to Compel Arbitration**

Goettl moves to compel arbitration of all Burciaga's claims for relief against the Company. (ECF No. 11.) The Court first addresses enforceability before turning to whether the asserted claims are covered by the respective arbitration clause.

**1. Whether the Operative 2022 Arbitration Agreement is Enforceable**

The parties agree that the 2022 Arbitration Agreement is the operative agreement but dispute its validity and enforceability. (ECF No. 11 at 10-11; ECF No. 15 at 7-10.) Before addressing this dispute, the Court first addresses a threshold choice-of-law matter. The parties appear to agree that the FAA governs the enforcement of the 2022 Agreement. (ECF No. 11 at 10-11; ECF No. 15 at 12.) However, absent the application of the FAA, California law applies to the interpretation of the 2022 Arbitration Agreement because, as described above, it is the law of the state in which Burciaga rendered services to the Company. (ECF No. 1 at 3 (stating that Burciaga served as a technician for the company in Vista, California); ECF No. 11-1 at 10.) As further explained below,

the Court finds that the 2022 Agreement is valid and enforceable under the FAA and California law, where applicable.

Under the FAA, an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To enforce an arbitration agreement, the Court must determine (1) whether the parties agreed to arbitrate their disputes, and (2) whether the claims in dispute fall within the scope of the arbitration agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *see also Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (holding that a party seeking to compel arbitration has the burden under the FAA to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue.") (internal citation omitted). If those requirements are satisfied, the FAA generally requires courts to enforce the arbitration agreement in accordance with its terms. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[6] In making such determinations, courts may also apply "ordinary state-law principles that govern the formation of contracts." *See Nguyen*, 763 F.3d at 1175 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, as described above, absent the application of the FAA, California law applies.

Here, the Court finds the first requirement is satisfied because there is a clearly demonstrated existence of an agreement to arbitrate. Burciaga does not dispute that he signed the 2022 Agreement. (ECF No. 15 at 9.) Instead, he contends that the Agreement

[6]The FAA provides: "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. The Court finds that the 2022 Agreement involves "commerce" as contemplated by the FAA. Moreover, as Goettl points out, the Complaint states the following: "Goettl is a covered employer … because, among other things, it employs individuals, including Plaintiff, who are engaged in interstate commerce or in the production of goods for interstate commerce or engaged in handling, receiving, selling, or otherwise working on goods or material that have been moved in or produced for interstate commerce." (ECF No. 1 at 4-5.)

is procedurally and substantively unconscionable and therefore unenforceable. (*Id.* at 13, 19.) The Court disagrees.

Under the FAA, generally applicable contract defenses, including unconscionability, may invalidate an arbitration agreement. *See* 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). To determine whether the 2022 Agreement is unconscionable, the Court will apply California contract law. Under California law, a contract provision may be unenforceable if "unconscionable at the time it was made." *See* Cal. Civ. Code § 1670.5(a). "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019). "Both procedural and substantive unconscionability must be shown for the defense to be established." *Id.* at 690. The overarching inquiry in unconscionability cases is "whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 749 (Cal. 2015). The party asserting unconscionability as a defense to the enforcement of the arbitration agreement bears the burden of proof. *See OTO*, 447 P.3d at 690.

A procedural unconscionability analysis begins with an inquiry into "whether the contract is one of adhesion."[7] *See OTO*, 447 P.3d at 690. Next, courts consider "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *Id.* Oppression arises from a "lack of negotiation and meaningful choice."[8] *Pinnacle Museum Tower Assn. v. Pinnacle Mkt.*

---

[7]A "contract of adhesion" is "a standardized contract [that is] imposed and drafted by the party of superior bargaining strength" and gives "the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 689 (Cal. 2000).

[8]"The circumstances relevant to establishing oppression include, but are not limited to (1) the *amount of time* the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's

*Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). Surprise can arise when "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (Cal. App. 1993) (internal citation omitted).

Here, the circumstances under which Burciaga signed the 2022 Arbitration Agreement did not involve oppression. Burciaga was not pressured to sign the 2022 Agreement, and the Court agrees that the document, itself, is a "two-page standalone, conspicuous document, clearly labeled, which unambiguously explains what is being agreed to." (ECF No. 22 at 4.) Moreover, Burciaga had already signed a similar agreement the year prior—i.e., the 2021 Agreement—which negates any element of surprise. (*Id.*) In his response, Burciaga does not identify any persuasive evidence that he was misled about the Agreement, prevented from reviewing it, or otherwise subjected to coercive circumstances beyond the ordinary inequality of bargaining power innate in an employment relationship. Even assuming the Agreement reflects some minimal degree of procedural unconscionability due to its adhesive nature, it is not per se unenforceable because, without showing substantive unfairness, as described below, Burciaga cannot establish unconscionability. *See, e.g.*, *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 980-82 (Cal. App. 2010) (explaining that where "the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high").

Burciaga fails to establish substantive unconscionability. Substantive unconscionability "focuses on the one-sidedness of the contract terms" and whether the terms, themselves, are "oppressive." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003). Here, Burciaga contends that the 2022 Agreement is substantively unconscionable

review of the proposed contract was aided by an attorney." *See OTO*, 447 P.3d at 690-91.

because it contains a bellwether provision[9] (ECF No. 15 at 13-17) and a cost-allocation provision (*id.* at 17-19). The Court is unpersuaded.

First, Burciaga principally relies on *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024) to support his argument regarding the bellwether provision. But, *Heckman* involves contracts in the consumer—as opposed to employment—context, which does not apply here. *See Heckman*, 120 F.4th at 676.

Second, Burciaga separately argues that the Agreement's prevailing-party fee shifting provision[10] renders the Agreement unenforceable because he asserts a claim under the FLSA, which generally authorizes an award of attorney's fees to a prevailing *plaintiff*. *See* 29 U.S.C. § 216(b); (ECF No. 15 at 17-18) (emphasis added). Stated differently, Burciaga contends that the fee shifting provision is unconscionable because its language suggests that an employee—as opposed to an employer—could be assigned the prevailing party's costs, a cost-shift prohibited by the FLSA. (*Id.*) The Court disagrees.

To determine substantive unconscionability, courts look to "the fairness of an agreement's *actual terms*"—not the parties' subjective understandings—to determine whether the terms are "overly harsh or one-sided." *See Pappas v. AMN Healthcare Servs., Inc.*, No. 25-473, 2025 WL 3720922, at *2 (9th Cir. 2025) (citing *OTO*, 447 P.3d at 690). As Goettl points out, when read in full, the provision at issue clearly prevents an arbitrator from shifting costs in a manner contrary to the applicable law.[11] (ECF No. 22 at

---

[9]Under the 2022 Agreement, "Bellwether procedures shall be used when more than 10 cases pending at the same time present substantially similar or overlapping allegations of fact or law. A court of competent jurisdiction, and not JAMS or an arbitrator, shall resolve any dispute over whether these bellwether procedures apply to any group of claims." (ECF No. 11-1 at 10.) The stated purpose of this procedure is to reduce "excessive transaction costs" and logistical challenges associated with arbitrating "simultaneously large numbers of substantially similar cases." (*Id.* at 11.)

[10]The cost-allocation provision states, "[t]o the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees; provided, however, that the arbitrator at all times shall apply the law for the shifting of costs and fees that a court would apply to the claim(s) asserted." (ECF No. 11-1 at 10.)

[11]Goettl indicates that the 2022 Agreement provides a "savings clause" described as follows: "provided, however, that the arbitrator at all times shall apply the law for the shifting of costs and fees that a court would apply to the claim(s) asserted." (ECF No. 11-1 at 10.)

7); *see id.* (reversing district court's determination that an arbitration agreement between employer and employee was unconscionable based on its same-worded cost-allocation provision). Thus, here, the Court finds that because the disputed provision does not permit cost shifting in violation of federal cost-allocation rules, there is no risk of an improper fee award that would render the 2022 Agreement unenforceable.

Lastly, although Burciaga may not possess bargaining power equal to that of his employer, the Company, the arbitration clause at issue is not so one-sided as to be found substantively unconscionable. *Contra Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (finding arbitration agreement lacked "modicum of bilaterality" because it imposes obligation to arbitrate only on claims by employees). In this case, the 2022 Agreement imposes mutual obligations on both parties to agree to arbitrate their employment disputes and to agree to binding arbitration.

Accordingly, even assuming some minimal degree of procedural unconscionability, Burciaga fails to show sufficient procedural or substantive unconscionability to invalidate the 2022 Agreement.

### 2. Whether the Arbitration Clauses Cover Burciaga's Claims

Next, the Court assesses whether Burciaga's claims fall within the scope of the 2022 Arbitration Agreement and finds that they do.[12] The FAA "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen*, 763 F.3d at 1175 (citing 9 U.S.C. § 3). "The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Id.* (citation omitted). Here, the 2022 Agreement expressly covers "all claims" that Burciaga might have against the Company or vice versa, subject to some exclusions not applicable

---

[12]In its Motion, Goettl contends that, alternatively, if the 2022 Arbitration Agreement is unenforceable, then the 2021 Arbitration Agreement applies. (ECF No. 11 at 10-11.) Even if the 2021 Agreement applies, the Court likewise finds that its arbitration clause covers Burciaga's claims against Goettl because it unambiguously directs binding arbitration of claims "arising out of" employment with the Company, including but not limited to, claims regarding "compensation" and "unpaid wages" as well as claims for "violation[s] of local, state, or federal law." (ECF No. 11-1 at 6-7.)

here. (ECF No. 11-1 at 10.) The Court thus finds that the arbitration clause in the 2022 Agreement covers Burciaga's claims against Goettl.

**B. Class Waiver**

Goettl next moves to dismiss the class and collective action claims on the basis that the 2022 Agreement contains unambiguous language waiving the right to bring any claims on a class-wide basis. (ECF No. 11 at 11; *see also* ECF No. 12.) Burciaga expressly agreed that any claims arising from his employment with Goettl would be arbitrated "on an individual basis only" and waived the right to "initiate, participate in, or recover through, any class or collective action." (ECF No. 11-1 at 10.) Burciaga responds that the 2022 Agreement "delegates these questions to a Court."[13] (ECF No. 15 at 9-10.) Even so and notwithstanding, the Court concludes that the terms of the Agreement are clear: Burciaga waived his right to pursue his claims on a class or collective basis. Accordingly, the Court grants the motion to dismiss Burciaga's class and collective action claims (ECF No. 12).

///

///

///

///

///

///

///

///

///

///

///

///

---

[13]Burciaga cites to the provision that states, "a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the formation, validity, or enforceability of any provision of this Agreement." (ECF No. 15 at 10.)

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Goettl's motion to compel arbitration of Burciaga's claims (ECF No. 11) is granted.

It is further ordered that Goettl's motion to dismiss Burciaga's class and collective action claims (ECF No. 12) is granted.

It is further ordered that the motion to stay this action pending arbitration of Burciaga's claims (ECF No. 13) is granted. The parties are directed to file a joint status report within 7 days from final resolution of the arbitration.

It is further ordered that the Clerk of Court kindly close this case administratively.

DATED THIS 24th Day of August 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE